**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRANDON KOMBERT-ROSENBLATT,

           Plaintiff,

   v.

COREY HESTER and HIDDEN PPF, LLC,

           Defendants.

Civil Action No. _____

**ECF CASE**

<u>**COMPLAINT**</u>

**JURY TRIAL DEMANDED**

Plaintiff Brandon Kombert-Rosenblatt ("Plaintiff"), by and through his attorneys, Pryor Cashman LLP, hereby files his Complaint against defendants Corey Hester ("Hester") and Hidden PPF, LLC ("Hidden NY" and, together with Hester, "Defendants"), and alleges as follows:

<u>**SUMMARY OF ACTION**</u>

1.     This action arises out of the manifold breaches of contractual arrangements by Defendant Hester – in his individual capacity and as the controlling member of Hidden NY – that had the effect of depriving Plaintiff of millions of dollars in value.

2.     Without notice or reasonable justification, Defendant Hester unilaterally expelled Plaintiff as a 15% equity holder in Hidden NY – a multimillion dollar enterprise – for $0.00. Additionally, Defendants unilaterally terminated Plaintiff's Employment Agreement with Hidden NY without abiding its notice period, and without paying compensation owed to Plaintiff under such agreement.  And, finally, while taking the position that Plaintiff is not an employee, Defendants simultaneously sought to enforce a facially unreasonable restrictive covenant that purports to prohibit Plaintiff from rendering services *worldwide*, and made false and derogatory allegations in a bid to prevent Plaintiff from working elsewhere.

3.      These actions, taken in concert, reveal a malicious scheme to deprive Plaintiff of millions of dollars, and Plaintiff files this action to obtain the amounts to which he is rightly entitled.

## THE PARTIES

4.      Plaintiff is an individual who resides in the County of Los Angeles, California.  For the duration of the Employment Agreement, Plaintiff performed the services set forth therein almost entirely within the County of Los Angeles, California.

5.      Defendant Hester is an individual residing in the State of New York.  He is also the President of Hidden NY.

6.      Defendant Hidden NY is a New York limited liability company with its designated principal office in Los Angeles, California.  Upon information and belief and following the wrongful ouster of Plaintiff as a holder of units of Hidden NY, Defendant Hester is the sole member of Hidden NY.

## JURISDICTION AND VENUE

7.      Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this action.  Plaintiff is a citizen of the State of California, and Defendants are each citizens of the State of New York.  The amount in controversy in this action exceeds $75,000.

8.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because defendants are residents of the State of New York (28 U.S.C. § 1391(b)(1)) and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district (28 U.S.C. § 1391(b)(2)).

## FACTS

9.      In or around September 2018, Corey Hester started an Instagram account titled @Hidden.ny. The account quickly became an immersive mood board frequented by menswear enthusiasts to learn about trends in design, art, and streetwear fashion.

10.      Despite the account's success, Hester remained anonymous as a way to counter the typical Instagram influencer culture, where people use their face to market and promote products.

11.      Eventually, Hester decided that he wanted to expand the Instagram account into a customer-facing lifestyle brand. On or about August 13, 2019, Hester filed the articles of organization for Hidden NY with the New York State Department of State Division of Corporations.

12.      In or around late 2020, Plaintiff contacted Hester as a fan of his page, and Plaintiff was ultimately brought on to build the brand and business of Hidden NY due to his extensive experience, resume, and track record of financial success with brand management.

13.      On January 1, 2021, Hester and Plaintiff executed that certain Amended and Restated Operating Agreement (the "Operating Agreement"), pursuant to which Plaintiff was given a fully vested fifteen percent (15%) membership interest in Hidden NY.  A true and correct copy of the Operating Agreement is attached hereto as Exhibit "A."

14.      On or about May 10, 2021, Plaintiff and Defendants negotiated an employment contract (the "Employment Agreement"). Although the contract is titled "Consulting Agreement," Hidden NY and Hester maintained the right of control over the means and manner of Plaintiff's work, and all the work performed by Plaintiff, and for which Plaintiff was compensated, was in the ordinary and usual course of Hidden NY's business. As such, at all times alleged herein,

Plaintiff was Hidden NY's employee. The parties agreed that Plaintiff would be paid $15,000.00 per month for his employment and efforts in building the brand and business of Hidden NY.

15.     It was agreed and understood that Plaintiff would work for Hidden NY out of the County of Los Angeles, where Plaintiff resides. Further, at no time was Plaintiff represented by counsel as part of the negotiations and preparation of the Employment Agreement, or at any time during his employment at Hidden NY. A true and correct copy of the Employment Agreement is attached hereto as Exhibit "B."

16.     Pursuant to Section 4(a) the Employment Agreement, "[e]ither party shall have the right to terminate this Agreement for any reason or no reason, provided that, such terminating party giving [sic] the other party at least 90 (ninety) days prior written notice."  (Ex. B, § 4(a).)

17.     Under Plaintiff's creative direction and efforts, Hidden NY grew from an Instagram account to a lifestyle brand selling millions of dollars of t-shirts, sweatshirts, totes, sneakers, and homeware.

18.     Through Plaintiff's efforts, Hidden NY acquired key counterparties and strategic partners for the brand. For example, through Plaintiff's efforts, as directed and overseen by the Defendants, Hidden NY released a t-shirt collaboration with various rappers and musicians, as well as collaborations with clothing, footwear, and denim brands.

19.     Because of Hidden NY's growth as a result of Plaintiff's efforts, in or around January 2022, it was agreed between Hester and Hidden NY, on the one hand, and Plaintiff, on the other hand, that Plaintiff's monthly payments would increase from $15,000 to $20,000 per month via biweekly installments.

20.     Thereafter, Hidden NY effected these increased salary payments to Plaintiff through Defendant Hester's exclusive control of the bank accounts of Hidden NY.

21.     Thereafter, Hidden NY paid Plaintiff $20,000 per month via biweekly payments for over four (4) months, without objection or dispute, and with Hester's full knowledge, consent, and participation.

22.     However, as explained above, Plaintiff is informed and believes, and based thereon alleges, that in April 2022, Hester and Hidden NY concocted a scheme with the intention of ousting Plaintiff from Hidden NY's business without compensation.

23.     To effectuate this scheme, on or about April 17, 2022, Hester required Plaintiff to execute an illegal and unenforceable Employee Proprietary Information and Inventions Agreement (the "PIIA"), which was delivered to Plaintiff to sign in California, without an opportunity to negotiate or revise.  A true and correct copy of the PIIA is attached hereto as Exhibit "C."  At no time was Plaintiff represented by counsel as part of the review, negotiations (or lack thereof), or execution of the PIIA.

24.     The PIIA purports to contain a non-compete provision in consideration of Plaintiff's "employment and continued employment by [Hidden NY]." In pertinent part, the non-compete provision required Plaintiff to agree to the following: "For the period of two years immediately following termination of my employment with the Company, I will not directly or indirectly: (i) Cause any person to leave their employment with the Company; or (ii) Solicit any Business Partner or (iii) act in Any Capacity in or with respect to any Competing Business located within the State of New York, *the rest of the United States, or anywhere else in the world."* (Ex. C, ¶ 4(d) [emphasis added].)

25.     "Capacity" under the PIIA was defined as including, *inter alia,* "the provision of services as an employee, advisor, consultant, contractor, or agent; investment; ownership."

"Competing Business" was defined as any "business that the Company conducts, or demonstrably anticipates conducting, at any time during [Plaintiff's] employment."

26. Essentially, the PIIA purported to preclude Plaintiff from working in both the clothing and social media businesses for two years after his employment, regardless of the reason for the termination of his employment.

27. On or about April 22, 2022, Hester countersigned the PIIA.

28. Around that same time, Plaintiff contacted Hidden NY's outside accountant to ask whether he was owed a tax distribution pursuant to Hidden NY's Operating Agreement, which provides, in pertinent part, in Section 5.1 –

> [Hidden NY] will Distribute to each Member no later than April 1 of each Taxable Year of [Hidden NY] (or on a quarterly basis prior to the estimated tax payments for individuals if the Board so determines) such Member's Tax Distribution Amount (each, a "Tax Distribution"). The "Tax Distribution Amount" in respect of each Unit means an amount equal to (i) the product of (A) the Assumed Tax Rate *multiplied by* (B) commencing with the data hereof (or the date the Member first acquired Units, if later) and ending on the last date of the Taxable Year, the cumulative excess of items of income over items of expense allocable to such Member, or the cumulative excess of items of gain over items of loss allocable to such Member, as appropriate, less (ii) any amounts distributed or previously distributed to such Member pursuant to Section 5.1 and 5.2.

29. Hidden NY's accountant indicated that Plaintiff was owed $73,718.00 as a tax distribution pursuant to the Hidden NY Operating Agreement.

30. On April 21, 2022, Plaintiff contacted Hester by email to request that Hester process the tax distribution on behalf of Hidden NY by wire payment.

31. As of the filing of this Complaint, Plaintiff has yet to receive the tax distribution to which he is entitled under the Operating Agreement.

32. Instead, days later – on or about April 25, 2022 and less than one hour after Defendant Hester countersigned the PIIA – Plaintiff unexpectedly received a letter (the "Termination Letter") from Hidden NY's attorneys, advising Plaintiff that his monthly $20,000.00

payments would be immediately terminated for alleged, but unidentified, breaches of fiduciary duty. Notably, the terms of the Employment Agreement required that Hidden NY provide 90 days' advance written notice with respect to any termination, which would have required payment to Plaintiff of $60,000.00. (Ex. B, § 4(a).)

33.     The Termination Letter also advised Plaintiff that pursuant to the Operating Agreement, Hidden NY's board (which is comprised exclusively of Hester) voted to expel Plaintiff as a member of Hidden NY, and that Plaintiff's membership interests had been forfeited for zero dollars ($0.00) of consideration.

34.     However, the Operating Agreement provides no provisions or authority to expel a member, nor could the Operating Agreement be amended pursuant to New York law to provide for such expulsion absent consent of Plaintiff.

35.     Plaintiff's consent to amend the Hidden NY Operating Agreement was neither solicited nor granted.

36.     Following Hidden NY's transmission of the Termination Letter, it also attempted to compel Plaintiff to execute a severance agreement releasing all of Plaintiff's claims against the Defendants in exchange for $45,000, which is $15,000 less than Plaintiff is contractually owed under the Employment Agreement (to say nothing of the tax distribution that was owed or the value of Plaintiff's equity in Hidden NY that Defendants wrongfully "forfeited").

37.     On or about April 28, 2022, Plaintiff responded to the Termination Letter and demanded an explanation of, *inter alia:* (i) the alleged breaches of fiduciary duty that purportedly justified his termination and expulsion from Hidden NY, and (ii) the basis for the authority of Hester and Hidden NY to terminate Plaintiff's fully vested membership interests and declare that his fifteen percent (15%) vested equity interest be forfeited.

38.     This information was particularly relevant given that the Operating Agreement provides no authority to expel a member from Hidden NY.

39.     On or about May 2, 2022, Hidden NY responded by letter (the "May 2nd Letter") stating that the alleged breaches of fiduciary duty consisted exclusively of "[Plaintiff] awarded himself a raise from the original contracted amount of $15,000, to $20,000 per month, without the Company's express authorization or approval… [and Plaintiff] attempted to withdraw more than $73,000 in Company funds for his own personal use, again without authorization or approval from the Company."

40.     Of course, Hester, as Hidden NY's managing member, President, Treasurer, and Board Member, had approved Plaintiff's $20,000 per month payment (and had processed the payments for six months).

41.     Moreover, Plaintiff was entitled under the Operating Agreement to payment of the tax distribution, and he had merely requested that the contractually required payment be made (though it never was).

42.     In short, the alleged "breaches of fiduciary duty" asserted by Hidden NY and Hester were entirely and definitively pretextual, and were fabricated as part of Hester's scheme to expel Plaintiff from the business and steal Plaintiff's equity in Hidden NY.

43.     Further, in the May 2nd Letter, Defendants advised Plaintiff, for the first time, that Hester had unilaterally voted to amend the Operating Agreement, without Plaintiff's knowledge or consent.  Regardless of the terms in the Operating Agreement, applicable law states that an operating agreement cannot be amended without the written consent of each member adversely affected thereby.  N.Y. L.L.C. L. § 417(b).

8

44.     The version of the Operating Agreement that Plaintiff signed included no provision permitting the expulsion of a member, whether for cause or not for cause. The purported amendment, a copy of which Defendants have refused to show Plaintiff, purportedly allows a controlling member to expel a minority member for cause, apparently without any investigation, notice, and without any consideration.

45.     In reliance on this purported amendment, Hester allegedly immediately voted to expel Plaintiff as a member and purchase his membership interests for $0, based upon the purported misconduct that occurred prior to the amendment of the Operating Agreement (the raise from $15,000.00 per month to $20,000.00 and the "attempted" request for the tax distribution).

46.     The result of Hester's unauthorized vote and attempted amendment was that Hester's interest in the Company effectively increased from 85% to 100%, without any consideration to Plaintiff.

47.     Defendants have refused to pay Plaintiff any money on account of distributions owed to Plaintiff prior to his wrongful expulsion, refused to offer any money on account of the equity wrongfully stripped from him, failed to pay him for the amounts due under his employment agreement, and have threatened to enforce the unenforceable non-compete agreement.

48.     Simply stated, Defendants threatened Plaintiff that unless he (i) accepted less in wages than he was contractually owed, (ii) waived money he was contractually entitled to receive under the Operating Agreement, and (iii) consented to the wrongful forfeiture of shares granted to him worth millions of dollars, Defendants would use the document they tricked him into signing to force him out of work, leaving him without any real source of income (and unlikely to be able to fund a litigation to vindicate his rights).

49.     When this egregious misconduct did not result in Plaintiff's capitulation, Defendant Hester defamed Plaintiff throughout the industry in a bid to ruin Plaintiff's reputation and prevent him from resisting Defendants' corrupt scheme.

50.     Specifically, Plaintiff is informed and believes, and based thereon alleges, that the Defendants and their agents have taken active efforts to interfere with Plaintiff's separate business dealings with third parties for the purpose of seeking leverage and to gain an unfair business advantage.

51.     Upon information and belief, in 2022, Defendants or those working in concert with them and/or at their direction contacted several high-profile figures in the streetwear industry, as well as associates of prominent members of the entertainment industry, to tell them that Plaintiff had stolen monies from Hidden NY and that, because of Plaintiff's theft, Defendants were forced to terminate Plaintiff.

52.     The individuals contacted by or on Defendants' behalf are actual or potential customers of Plaintiff or individuals that are likely to repeat statements to actual or potential customers of Plaintiff.

53.     Plaintiff also is informed and believes, and based thereon alleges, that Defendants made these statements with the intention of causing harm to Plaintiff's professional reputation and business dealings with third parties.

54.     On June 24, 2022, Plaintiff filed a Complaint against Defendants in the Superior Court of California, Los Angeles County, seeking relief for the claims asserted herein.  The action was styled *Kombert-Rosenblatt v. Hidden PPF, LLC,* No. 22STCV20746 (the "California Action").

55.     On or about September 14, 2022, Defendants filed a motion to dismiss or stay the California Action on the basis of the forum selection clause in the Employment Agreement.

56.     On or about November 15, 2022, Judge Mackey of the Superior Court of California, Los Angeles County granted Defendants' motion and stayed the California Action pending final disposition of the dispute in New York.  *See* Minute Order, *Kombert-Rosenblatt v. Hidden PPF, LLC,* No. 22STCV20746 (Cal. Sup. Ct., Los Angeles Cnty. Nov. 15, 2022).

## CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT
(Against All Defendants)

57.     Plaintiff incorporates by reference paragraphs 1 through 55, inclusive, as if set forth fully herein.

58.     Hester and Plaintiff signed and entered into the Operating Agreement on or about January 1, 2021.  Hidden NY is also a party to the Operating Agreement.

59.     Plaintiff performed all, or substantially all, of the conditions under the Operating Agreement required of him to do, except for those things excused by Defendants' actions.

60.     Hester and Hidden NY breached the Operating Agreement by expelling Plaintiff as a member, without the authority to do so under the Operating Agreement, and in violation of law.

61.     The attempt to expel Plaintiff and terminate his membership interests in Hidden NY, in contravention of the Operating Agreement, was an improper transfer of membership units under the Operating Agreement.

62.     Alternatively, even if Defendants' amendment of the Operating Agreement was valid –which it was not – Hester and Hidden NY breached the Operating Agreement by:

a.  failing to pay Plaintiff his fifteen percent (15%) vested membership equity in Hidden NY, which at the time of the Termination Letter was valued at $2,500,000.00 or more, according to proof at the time of trial; and

b.  expelling Plaintiff without cause for actions that, if they occurred (which they did not), occurred prior to the date of the purported amendment, without investigation, without notice, and without any opportunity to present evidence that "cause" for expulsion did not exist.

63.  Defendants also breached the Operating Agreement by:

a.  Failing to produce financial information and records of Hidden NY as required under the Operating Agreement, and further prohibited Plaintiff from inspecting Hidden NY's books and records following Plaintiff's request [Operating Agreement §§ 3.1(a),(b)];

b.  Failing to distribute to Plaintiff Tax Distributions and Operational Distributions as Plaintiff was entitled to under the Operating Agreement [Operating Agreement §§ 5.1 and 5.2];

c.  Failing to provide notice and an opportunity of Plaintiff to participate and vote at Meetings of Members, including the alleged meeting resulting in Plaintiff's expulsion, in violation of the Operating Agreement [Operating Agreement §§ 2.3(a)-(b)];

d.  Improperly and invalidly attempting to amend the Operating Agreement without notice, approval, or input from Plaintiff in violation of the Operating Agreement and law; and,

e.   Improperly and invalidly seeking to transfer or invalidate Plaintiff's membership interests in Hidden NY, in violation of the Operating Agreement and law.

64.   As a direct and proximate result of Defendants' failure to perform pursuant to the contract, Plaintiff has incurred damages in an amount to be established at trial, but believed to be in excess of $2,500,000.00. Further, pursuant to Sections 9.6(a) of the Operating Agreement, Plaintiff is entitled to an award of his attorneys' fees and expenses.

## COUNT II: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
(Against All Defendants)

65.   Plaintiff incorporates by reference paragraphs 1 through 55, inclusive, as if set forth fully herein.

66.   Every contract contains an implied-in-law covenant of good faith and fair dealing, including the Operating Agreement, referenced above. Pursuant to the implied covenant of good faith and fair dealing, Defendants were obligated to perform the terms and conditions of the Operating Agreement fairly and in good faith, and to refrain from doing any act that would deprive Plaintiff of the benefits thereof.

67.   Defendants have breached the implied covenant of good faith and fair dealing by purporting to surreptitiously amend the Operating Agreement to provide for forfeiture of Plaintiff's 15% vested equity interest and subsequently purporting to cause forfeiture of Plaintiff's interest on the basis of such purported amendment.

68.   Plaintiff has performed all the duties required of Plaintiff under the Operating Agreement, except for those matters which were excused by Defendants' breaches.

69.   As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer damages in an amount to be established at trial, but believed to be in excess of $2,500,000.00.

70.     As a further proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has incurred reasonable attorneys' fees and expenses in attempting to secure the benefits owed to him under the Operating Agreement.

## COUNT III: CONVERSION
(Against All Defendants)

71.     Plaintiff incorporates by reference paragraphs 1 through 69, inclusive, as if set forth fully herein.

72.     A membership interest in a limited liability company is personal property.

73.     At all times herein mentioned, Plaintiff was the owner of fifteen percent (15%) of the membership interests in Hidden NY.

74.     On or about April 25, 2022, through the date of this Complaint, the value of Plaintiff's fifteen percent (15%) membership interests in Hidden NY was no less than $2,500,000.00.

75.     On or about April 25, 2022, or shortly thereafter, Defendants converted Plaintiff's fifteen percent (15%) membership interests in Hidden NY for their own use by unilaterally, and without authority, terminating Plaintiff's membership interests and expelling Plaintiff as a member of Hidden NY for no consideration.  In so doing, Defendants seek to have one-hundred percent equity ownership in Hidden NY.

76.     As a proximate result of Defendants' conversion, Plaintiff has suffered damages in an amount to be established at trial, but believed to be in excess of $2,500,000.00.

77.     Between the date of Defendants' conversion of Plaintiff's membership interests in Hidden NY and the filing of this action, Plaintiff has properly expended at least $50,000.00 in pursuit of the converted property.

78.    The Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud Plaintiff, thereby justifying an award of exemplary and punitive damages.

**COUNT IV: BREACH OF FIDUCIARY DUTY**
(Against Hester)

79.    Plaintiff incorporates by references paragraphs 1 through 77, inclusive, as if set forth fully herein.

80.    Prior to Defendants' unlawful and improper ouster of Plaintiff, Hester was Hidden NY's sole Board member, Managing Member, President, and Treasurer, as well as Hidden NY's majority interest holder.

81.    Plaintiff held a minority vested interest in Hidden NY.

82.    In these roles, Hester owes a fiduciary duty to Plaintiff to perform his duties in good faith and with a degree of care that an ordinary prudent person in a like position would use under similar circumstances, and to avoid self-dealing, and also requires Hester to avoid situations in which his personal interests are in conflict with the interests of Plaintiff.

83.    Hester breached the fiduciary duty he owed to Plaintiff by unilaterally seeking to terminate Plaintiff's fifteen percent (15%) fully vested membership interests in Hidden NY for no consideration and expelling Plaintiff as a member, in a blatant attempt to obtain one- hundred percent (100%) equity ownership in Hidden NY for himself without compensation.

84.    Hester relied on a complete sham and fabricated an entirely pretextual basis to seek to terminate and expel Plaintiff as a member in Hidden NY for his own personal benefit.

85.    Such self-dealing put Hester's own personal interests in conflict with the interests of Plaintiff.

86.     In acting as described above, Hester failed to exercise the degree of care and duty of loyalty that a managing member, majority interest member, and/or board member of Hidden NY owes to minority members such as Plaintiff.

87.     Hester's conduct was a substantial factor in causing Plaintiff's harm.

88.     As a proximate result of the acts of Hester, Plaintiff has been damaged in an amount to be established at trial, but believed to be in excess of $2,500,000.00.   Plaintiff is entitled to damages in these sums as a result of the breach and a constructive trust to trace any of the money at issue.

89.     Hester's acts alleged above were willful, wanton, malicious, and oppressive and were undertaken with the intent to defraud Plaintiff, thereby justifying an award of exemplary and punitive damages.

**COUNT V: ACCOUNTING**
(Against All Defendants)

90.     Plaintiff incorporates by references paragraphs 1 through 88, inclusive, as if set forth fully herein.

91.     As alleged herein, a sufficient relationship exists between Plaintiff and Defendants that requires an accounting, including accounting for the amounts owed for Plaintiff's fifteen percent (15%) membership interest, the amounts owed to Plaintiff under the Employment Agreement, and the tax distributions owed by Hidden NY to Plaintiff under the Operating Agreement.

92.     A balance is due to Plaintiff that can only be ascertained by an accounting.

93.     Therefore, an accounting is required to determine the amount owed to Plaintiff from Defendants.

## COUNT VI: DECLARATORY JUDGMENT
(Against All Defendants)

94.     Plaintiff incorporates by references paragraphs 1 through 92, inclusive, as if set forth fully herein.

95.     There exists a dispute among the parties regarding their respective rights and obligations regarding the PIIA and the Employment Agreement.

96.     First, Plaintiff contends that the non-compete and non-solicitation provisions of the PIIA are unenforceable and void.  Plaintiff also contends that the choice of law and choice of forum provisions of the PIAA are voidable under California law.

97.     With respect to the Employment Agreement, Plaintiff contends that the choice of law and choice of forum provisions are unenforceable.

98.     Plaintiff is informed and believes that Defendants dispute these contentions.

99.     Plaintiff hereby seeks a declaration that:

   a.   The non-compete, non-solicitation, choice of law and choice of forum provisions in the PIIA are void and unenforceable; and

   b.   The choice of law, choice of forum and "waiver of jury trial" provisions in the Employment Agreement are void and unenforceable.

100.    With respect to each of the foregoing, Defendants stated in connection with their motion to stay the California Action that they "will not attempt to enforce" them "if Plaintiff refiles this case in New York."  *See* Declaration of Corey Hester ¶¶ 19-20, *Kombert-Rosenblatt v. Hidden PPF, LLC,* No. 22STCV20746 (Cal. Sup. Ct., Los Angeles Cnty. Sept. 14, 2022).

101.    However, given Defendants' prior, flagrant breaches of their contractual obligations, Plaintiff is unable and unwilling to take Defendants at their word.  Accordingly, Plaintiff is entitled to a judgment declaring such provisions void and unenforceable.

## COUNT VII: BREACH OF CONTRACT
### (Against Hidden NY)

102.     Plaintiff incorporates by reference paragraphs 1 through 55, inclusive, as if set forth fully herein.

103.     Hidden NY and Plaintiff entered into the Employment Agreement in or around May 10, 2021. Pursuant to the Employment Agreement, the parties assented to the right of Plaintiff to be compensated thereunder, for his employment services at Hidden NY. Indeed, for almost a year Hidden NY compensated Plaintiff for his employment services, including after the agreement was modified to increase Plaintiff's monthly compensation from $15,000/month to $20,000/month starting in January 2022.

104.     Plaintiff performed all, or substantially all, of the conditions the Employment Agreement required of him to do, except for those things excused by Defendants' actions.

105.     Hidden NY breached the Employment Agreement by failing to pay Plaintiff for ninety (90) days following his termination, totaling $60,000.00.

106.     As a direct and proximate result of Defendants' failure to perform pursuant to the contract, Plaintiff has incurred damages in an amount to be proven at trial, but in no event less than $60,000.00.

107.     Further, pursuant the Employment Agreement, Plaintiff is entitled to an award of his attorneys' fees and expenses.

## COUNT VIII: DEFAMATION
### (Against All Defendants)

108.     Plaintiff incorporates by references paragraphs 1 through 106, inclusive, as if set forth fully herein.

109.     Plaintiff is informed and believes, and based thereon alleges, that the Defendants and their agents have taken active efforts to interfere with Plaintiff's separate business dealings with third parties for the purpose of seeking leverage and to gain an unfair business advantage.

110.     Plaintiff is informed and believes, and based thereon alleges, that Defendants and their agents falsely represented to third parties that Hidden NY had terminated Plaintiff because Plaintiff stole merchandise and money from Hidden NY.

111.     Defendants' representations to third parties concerning Plaintiff are false because Plaintiff did not steal merchandise or money from Hidden NY.

112.     Plaintiff also is informed and believes, and based thereon alleges, that Defendants made these statements with the intention of causing harm to Plaintiff's professional reputation and business dealings with third parties.

113.     Defendants' false and defamatory statements to third parties have injured Plaintiff in an amount to be proven at trial in this action, plus an award of punitive damage to deter such egregious misconduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment in his favor as follows:

A.     On Count I, a money judgment in an amount not less than $2,500,000, to be proven at trial, plus interest, against Defendants, together with an award of Plaintiff's attorneys' fees;

B.     On Count II, a money judgment in an amount not less than $2,500,000, to be proven at trial, plus interest, against Defendants, together with an award of Plaintiff's attorneys' fees;

C.     On Count III, a money judgment in an amount not less than $2,500,000 to be proven at trial, plus interest, against Defendants, together with an award of Plaintiff's attorneys' fees;

D.      On Count IV, a money judgment in an amount not less than $2,500,000, to be proven at trial, plus interest and punitive damages against Hester, together with an award of Plaintiff's attorneys' fees;

E.      On Count V, an order against defendants compelling an accounting of all monies owed to Plaintiff under the Operating Agreement and Employment Agreement, and payment of such amounts to Plaintiff;

F.   On Count VI, a declaration that:

    a.   The non-compete, non-solicitation, choice of law and choice of forum provisions in the PIIA are void and unenforceable; and

    b.   The choice of law, choice of forum and "waiver of jury trial" provisions in the Employment Agreement are void and unenforceable.

G.      On Count VII, a money judgment in an amount not less than $60,000, plus interest, against Defendants, together with an award of Plaintiff's attorneys' fees;

H.      On Count VIII, a money judgment in an amount to be proven at trial, plus interest and punitive damages; and

I.      For such other, further and different relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issue so triable.

Dated:  New York, New York
        February 27, 2023

                              **PRYOR CASHMAN LLP**

                              Michael Goldberg
                              Marion R. Harris
                              7 Times Square
                              New York, New York 10036
                              Tel.: (212) 421-4100
                              Fax: (212) 326-0806
                              mgoldberg@pryorcashman.com
                              mharris@pryorcashman.com

                              *Attorneys for Plaintiff*