UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ BRANDON KOMBERT-ROSENBLATT,          │
│                                      │
│         Plaintiff,                   │
│                                      │
│    -v-                               │
│                                      │
│ COREY HESTER AND HIDDEN PPF,         │
│ LLC,                                 │
│                                      │
│         Defendants.                  │
│                                      │
│                                      │
│                                      │
└─────────────────────────────────────┘
```

23-cv-1621 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

This is a civil action filed by plaintiff Brandon Kombert-Rosenblatt ("Kombert-Rosenblatt") against defendants Corey Hester ("Hester") and Hidden PPF, LLC ("Hidden.NY") arising from plaintiff's expulsion as a member of Hidden.NY and his termination as an employee of Hidden.NY. Federal jurisdiction is premised on diversity. See Compl., ¶ 7, ECF No. 1.

On May 1, 2023, defendants filed a motion to dismiss the Complaint. See ECF No. 20. After full consideration of the parties' written submissions and oral arguments, the Court granted in part and denied in part defendants' motion by "bottom-line order" dated June 16, 2023. This Opinion reconfirms that order and explains the

reasons underlying that ruling.[1] Plaintiff's motion to strike is also granted.

## I.   Plaintiff's Allegations

Hidden.NY is a tastemaker. See Compl., ¶¶ 9, 11. It identifies trends in design, art, and fashion, primarily through its Instagram account. Id. ¶ 9. The company allegedly has substantial value, as plaintiff alleges that his 15% interest in it was worth $2,500,000 at the time of his expulsion. Id. ¶ 62(a).

In or around late 2020, plaintiff approached Hester, the founder of Hidden.NY, and was taken on board to provide Hidden.NY with consulting on brand management. Id. ¶ 12. On January 1, 2021, their business relationship was formalized in an Operating Agreement, pursuant to which plaintiff was given a 15% membership interest in Hidden.NY. Id. ¶ 13. On May 10, 2021, plaintiff and defendants also entered into a Consulting Agreement, pursuant to which Hidden.NY would pay plaintiff $15,000 per month in exchange for his services. Id. ¶ 14.

Plaintiff alleges that, in or around January 2022, he and defendants agreed to increase his monthly compensation to $20,000

---

[1] In the bottom-line order, the Court granted the motion to dismiss Count One to the extent that it asserts the defendants breached the Operating Agreement by failing to provide plaintiff with notice and an opportunity to participate at the meeting at which Hester purportedly amended the Operating Agreement and denied the motion to dismiss in all other respects. For the reasons given below, the Court hereby modifies that order so that the claim for breach of the Operating Agreement for failure to provide financial information is also dismissed, with, however, leave to amend.

per month. Id. ¶ 19. The alleged modification was apparently not reduced to writing, see Pl. Mem. of Law in Opp. to Mot. to Dismiss at 18-19, ECF No. 23, but plaintiff was subsequently paid $20,000 per month for at least four months, Compl., ¶ 21.

Plaintiff and defendants then had a falling out. Plaintiff alleges that, on April 21, 2022, he contacted Hester to request that Hidden.NY pay him a tax distribution, in the amount of $73,718, that, he alleges, he was owed as a member under the Operating Agreement. Id. ¶¶ 28-30. Four days later, on April 25, 2022, Hidden.NY's attorneys sent plaintiff a termination letter, advising plaintiff that his employment had been terminated for alleged breaches of fiduciary duty. Id. ¶ 32. The termination letter also informed plaintiff that Hidden.NY's board, comprised solely of Hester, had voted to expel plaintiff as a member of Hidden.NY, and that plaintiff's 15% membership interest had been forfeited in exchange for $0. Id. ¶ 33. In particular, by defendants' own telling, Hester, as the sole board member and the holder of a majority of the membership interests in Hidden.NY, unilaterally amended the Operating Agreement on April 25, 2022 (the "Amended Operating Agreement"), pursuant to which plaintiff's membership interests ceased to exist. Def. Mem. of Law in Supp. Of Mot. to Dismiss at 4, 8, ECF No. 20.

The Complaint asserts a variety of state-law claims arising from plaintiff's expulsion and termination. Count One asserts a

breach of the Operating Agreement. Compl., ¶¶ 57-64. Count Two asserts a breach of the implied covenant of good faith and fair dealing related to the Operating Agreement. Id. ¶¶ 65-70. Count Three asserts a conversion claim. Id. ¶¶ 71-78. Count Four asserts that Hester breached his fiduciary duties. Id. ¶¶ 79-89. Count Five asserts that an accounting is due. Id. ¶¶ 90-93. Count Six requests a declaratory judgment that a variety of contractual provisions are void and unenforceable. Id. ¶¶ 94-101. Count Seven asserts a breach of the Consulting Agreement against Hidden.NY. Id. ¶¶ 102-107. Count Eight asserts a defamation claim. Id. ¶¶ 108-113.

## II. Discussion

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). If the plaintiffs have "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. The Court must "constru[e] the

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008).

### a. <u>Motion to Strike</u>

As a threshold matter, plaintiff filed a motion to strike the defendants' discussion of the Amended Operating Agreement, which was appended to defendants' reply papers. <u>See</u> ECF No. 29.

A complaint is deemed to contain a document if any one of three conditions is satisfied. First, the complaint may attach the document or incorporate it by reference. <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995). Second, the complaint may "rel[y] . . . upon its terms and effects" to such an extent that the document is "integral" to the complaint. <u>Id.</u> Third, the document may be subject to judicial notice. <u>See</u> Fed. R. Evid. 201(b). None of these conditions are met here.

First, the Complaint does not incorporate the Amended Operating Agreement by reference. The Complaint never incorporates it explicitly, and all of the Complaint's references to the Amended Operating Agreement are oblique and do not concede either the existence or the content of the amendment. <u>See, e.g.</u>, Compl., ¶ 46 ("The result of Hester's unauthorized vote and attempted amendment was that Hester's interest . . . effectively increased.").

Second, the Amended Operating Agreement is not integral to plaintiff's claims. Plaintiff claims that the defendants unlawfully expelled him from Hidden.NY and committed various other wrongs. These allegations do not presuppose that the Operating Agreement was amended. Instead, the Amended Operating Agreement is integral to defendant's response to plaintiff's allegations -- namely that defendants did nothing wrong because the Amended Operating Agreement permitted plaintiff's expulsion. See Defs. Mem. of Law in Supp. of Mot. to Dismiss at 4, 16. But that defense, while it may be raised in defendants' prospective Answer, does not make the Amended Operating Agreement integral to plaintiff's claims.

Finally, the Court cannot take judicial notice of the Amended Operating Agreement. Judicial notice may be taken of facts that are either "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Neither of these prongs is met. Obviously, the existence and content of the Amended Operating Agreement is not generally known within the Southern District of New York. More importantly, the plaintiff has raised a genuine dispute concerning the authenticity of the Amended Operating Agreement. While Hester has declared that the exhibit copy of the Amended Operating Agreement is "true and correct," see Hester Decl., ¶ 2, ECF No.

28, nothing else has been submitted that corroborates the authenticity of the document. Moreover, plaintiff himself did not sign the Amended Operating Agreement; and, in the Complaint, he alleges that he was never given notice of the meeting at which the Operating Agreement purportedly was amended. See Compl., ¶¶ 43-44, 62-63. Indeed, in plaintiff's opposition papers, plaintiff's counsel asserts, "to this day Plaintiff has never been provided with a copy of the purported secret, new operating agreement." Pl's Opp. at 7. The authenticity of the document is meaningfully in dispute and thus judicial notice is improper.

The Court therefore grants the motion to strike because the Amended Operating Agreement is not properly before the Court on this motion. Thus, in assessing whether the motion to dismiss should be granted, the Court will not consider the alleged Amended Operating Agreement.[3]

> b. Count One

Plaintiff alleges that defendants breached the Operating Agreement in four ways: (1) by expelling plaintiff from Hidden.NY; (2) by failing to produce financial information and records of Hidden.NY; (3) by failing to distribute a tax distribution to plaintiff; and (4) by failing to provide to plaintiff notice and

---

[3] While the Court is obliged to strike the Amended Operating Agreement at this juncture, for reasons detailed below, the Court's rulings on the motion to dismiss would have been the same even if the motion to strike had been denied.

an opportunity to participate and vote at certain members'
meetings. Many of these alleged breaches turn on whether the
defendants' action that forfeited plaintiff's membership interests
in Hidden.NY was a lawful amendment of Hidden.NY's Operating
Agreement. The Court finds plaintiff has adequately pled the
Operating Agreement was not lawfully amended.

Hidden.NY is a New York limited liability company ("LLC").
Compl., ¶ 6. The default statutory rule in New York provides:

> The operating agreement of a limited liability company may be
> amended from time to time as provided therein; provided,
> however, that, **except as otherwise provided in the operating
> agreement or the articles of organization**, without the
> written consent of each member adversely affected thereby,
> (i) no amendment of the operating agreement or (ii) to the
> extent any provision concerning (A) the obligations of any
> member to make contributions, (B) the allocation for tax
> purposes of any items of income, gain, loss, deduction or
> credit, (C) the manner of computing the distributions of any
> member or (D) the compromise of an obligation of a member to
> make a contribution is contained in the articles of
> organization, no amendment of such provision in the articles
> of organization, shall be made that (i) increases the
> obligations of any member to make contributions, (ii) alters
> the allocation for tax purposes of any items of income, gain,
> loss, deduction or credit, (iii) alters the manner of
> computing the distributions of any member or (iv) allows the
> obligation of a member to make a contribution to be
> compromised by consent of less than all the members.

N.Y. Limited Liab. Co. Law § 417(b) (emphasis supplied).

The Operating Agreement (Compl., Ex. A) unambiguously does
not alter this default rule.[4] Section 11.2 of the Operating

---

[4] Even if the contract were ambiguous, reading the Operating Agreement in the
light most favorable to plaintiff, as the Court must on a motion to dismiss,
would support the same reading and outcome.

Agreement states, "Any amendment to, or waiver of, any provision of this Agreement will require the approval of the Board and a Majority in Interest of the Members." Compl., Ex. A. at 20. Hester argues this provision gave him sweeping powers to amend the Operating Agreement unilaterally because he was the sole board member of Hidden.NY, Compl., ¶ 33, and he held a majority of the membership interests (85%) in Hidden.NY, Compl., ¶ 46. See Def. Mem. of Law in Supp. of Mot. to Dismiss at 8. That is not the best reading of the provision. Instead, the provision should be read as merely establishing a baseline procedure by means of which any amendment of the Operating Agreement must be effectuated and thus does not abrogate the more stringent procedure provided under New York Limited Liability Company Law § 417(b) for extraordinary amendments.

This reading is confirmed upon considering the place of Section 11.2 in the Operating Agreement as a whole. If Hester's interpretation of Section 11.2 were correct, he would have the power to unilaterally amend any provision of the Operating Agreement at will. It would therefore be unclear why the parties established any Operating Agreement at all.

Under the default statutory rule, plaintiff could not be expelled without his written consent. His expulsion would have "adversely affected" him, and it would have, among other things, "alter[ed] the manner of computing the distributions of any

member," for he would no longer have any entitlements to a distribution. See N.Y. Limited Liab. Co. Law § 417(b). Plaintiff adequately alleges that his written consent was never sought. Compl., ¶ 35. Therefore, at the motion to dismiss stage, plaintiff has adequately alleged that the Operating Agreement was not lawfully amended so as to cause plaintiff to forfeit his membership interests in exchange for no consideration.

Given that the Complaint adequately alleged Hester did not lawfully amend the Operating Agreement, defendants' motion to dismiss should be denied with respect to two of the alleged breaches of the Operating Agreement but granted as to two.

To state a claim for breach of contract, plaintiff must establish: (1) the existence of a contract; (2) its own adequate performance of the contract; (3) breach of the contract by defendant; and (4) damages suffered as a result of the breach. Dollar Phone Corp. v. Dun & Bradstreet Corp., 559 F. App'x 71, 72 (2d Cir. 2014).

### a. Expulsion

Plaintiff alleges that expelling him from Hidden.NY breached the Operating Agreement. Plaintiff's argument is straightforward. Section 2.2 of the Operating Agreement provides that a particular schedule (the "Unit Register"), which provides 15% of the membership interests to plaintiff, specifies the name and number

of units of membership interests that each member has. Compl., Ex. A at 5, 27. Neither Section 2.2 nor any other section of the Operating Agreement provides for the forfeiture of membership interests. Plaintiff alleges that defendants, by unlawfully expelling plaintiff from membership in breach of the Operating Agreement, caused him to forfeit his interest that was valued at $2.5 million for $0. Compl., ¶¶ 2, 33, 62(a). The complaint thus states a claim for breach of contract based on plaintiff's expulsion, and the motion to dismiss is denied as to this claim.

  b. <u>Financial Information</u>

  Plaintiff alleges defendants separately breached the Operating Agreement by failing to provide him financial information and records. Section 3.1(a)-(b) of the Operating Agreement requires Hidden.NY to furnish financial information to its members and to permit members to examine its books (provided that reasonable advanced notice is made). Compl., Ex. A at 7. However, plaintiff only alleges in purely conclusory fashion that defendants failed to furnish such information. See Compl., ¶ 63(a). As such, the Complaint fails to state a claim for breach of contract based on the withholding of financial information and records. Therefore, this claim is dismissed, but plaintiff is granted leave to amend the complaint and replead this claim,

provided he does so within one week following the filing of this Opinion and Order.

### c. Tax Distribution

Plaintiff alleges defendants breached the Operating Agreement by failing to pay him a tax distribution. Section 5.1 of the Operating Agreement requires Hidden.NY to make annual or quarterly tax distributions to its members. Compl., Ex. A at 9. Plaintiff alleges that Hidden.NY's accountant informed him that he was owed $73,718 as a tax distribution in 2022, that plaintiff requested that distribution, and that plaintiff never received that distribution. Compl., ¶¶ 28-31. Defendants' argument that the Complaint does not plead sufficient facts to support plaintiff's allegation that he was owed $73,718, see Defs. Mem. of Law in Supp. of Mot. to Dismiss at 11, fails because the allegation that Hidden.NY's accountant informed plaintiff he was owed this amount is sufficient to survive a motion to dismiss. The Complaint therefore states a claim for breach of contract based on the withholding of the tax distribution, and the motion to dismiss is denied as to this claim.

### d. Notice and Opportunity to Participate at Meeting

Finally, plaintiff alleges that defendants breached the Operating Agreement by failing to provide him notice and an opportunity to participate and vote at certain meetings of members.

In general, Section 2.3(a) of the Operating Agreement provides "any event, transaction, or occurrence requiring approval of the Members will be deemed to require the approval of the Majority in Interest of the Members, either at a meeting or in writing pursuant to Section 2.3(b)." Compl., Ex. A at 5. Section 2.3(b)(iii) then provides the written notice requirement for meetings where a vote is to take place. Id. Plaintiff alleges that Hester breached these provisions of the Operating Agreement by failing to provide him with notice of the meeting at which Hester sought to amend the Operating Agreement. Compl., ¶ 63(c). However, plaintiff does not adequately allege he suffered damages from this alleged breach, other than his expulsion that followed, which is already covered by other aspects of plaintiff's claim for breach of contract.

In other words, this claim is effectively duplicative, and defendants' motion to dismiss is therefore granted to the extent that Count One asserts that defendants breached the Operating Agreement by failing to provide plaintiff with notice and an opportunity to participate at the meeting at which Hester purportedly amended the Operating Agreement.

### e. Count Two

Defendants also moved to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing as set forth in Count Two. "New York law . . . does not recognize a separate

cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); see also Kermanshah v. Kermanshah, 580 F. Supp. 2d. 247, 272 (S.D.N.Y. 2008) ("If the allegations underlying the breach of the implied covenant of good faith claim and the breach of contract claim are the same, then the good faith claim is 'redundant' and cannot survive a motion to dismiss."). Here, plaintiff's claim for breach of the implied covenant of good faith and fair dealing parallels his claims for breach of the Operating Agreement, premising the claim on the same underlying facts. See Compl., ¶¶ 65-70 (alleging the breach of the implied covenant of good faith and fair dealing arises from the forfeiture of plaintiff's membership interests). Since plaintiff's claim for breach of the Operating Agreement is proceeding forward in relevant part, Count Two must be dismissed.

### f. Count Three

Count Three for conversion is dismissed for similar reasons. Specifically, under New York law, "a conversion claim must be dismissed when it does not stem from a wrong independent of the alleged breach of contract." See Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013); see also Jain v. T & C Holding Inc., No. 10 Civ. 1006(RMB), 2011 WL 814659,

at *6 (S.D.N.Y. Mar. 3, 2011) (granting motion to dismiss conversion claim as a "mere duplication of the contract cause of action").

Here, the nub of plaintiff's conversion claim is that he was wronged when Hester seized plaintiff's membership interests. See Compl., ¶¶ 73-75. But plaintiff's claim for breach of contract arising from the cancellation of his membership interests is proceeding forward under Count One. Furthermore, plaintiff effectively concedes in his responsive papers that his conversion claim parallels his claim for breach of contract. See Pl's Opp. at 13-14. Count Three is accordingly dismissed because it is duplicative of plaintiff's claim for breach of contract.

g. Count Four

Defendants moved to dismiss plaintiff's claim that Hester breached his fiduciary duty. Under New York law, "the elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." In re Stillwater Capital Partners Inc. Litig., 851 F. Supp. 2d 556, 569 (S.D.N.Y. 2012). In particular, the duty of loyalty prohibits self-dealing. See, e.g., In re L&N Twins Place LLC, No. 20-CV-1858 (KMK), 2020 WL 7211235, at *3 (S.D.N.Y. Dec. 4, 2020) ("The fiduciary duty of loyalty, as reflected in the 'good faith' requirement of § 409, bars 'not only

blatant self-dealing, but also requir[es] avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty" (quoting Birnbaum v. Birnbaum, 539 N.E.2d 574, 576 (N.Y. 1989)).

Defendants concede that the majority members of an LLC owe a fiduciary duty to minority members. Defs. Mem. Of Law in Supp. of Mot. to Dismiss at 15. And plaintiff has adequately alleged that if Hester's expulsion of plaintiff from Hidden.NY breached Hester's fiduciary duty, plaintiff suffered damages as a result. See Compl., ¶¶ 87-88. That leaves one question: whether plaintiff has sufficiently alleged that Hester breached his fiduciary duty to plaintiff by expelling him.

If the allegations in the Complaint are taken as true, Hester's expulsion of plaintiff was a case of self-dealing. The Complaint alleges Hester expelled plaintiff, which cancelled plaintiff's 15% membership stake and increased Hester's own stake from 85% to 100%, simply to enrich himself. See id. ¶¶ 33, 45-46.

Defendants dispute these factual allegations. Defendants claim that plaintiff forfeited his membership interests because plaintiff wrongfully attempted to withdraw over $70,000 of company funds without prior authorization and unilaterally awarded himself a raise. Defs. Mem. Of Law in Supp. of Mot. to Dismiss at 15-16. Defendants claim, therefore, that they expelled plaintiff with the

best interests of Hidden.NY in mind. Id. at 16. But this is a factual dispute that cannot be resolved on a motion to dismiss.

Since plaintiff has pled sufficient facts to support a claim for breach of fiduciary duty, defendants' motion to dismiss Count Four must be denied.

### h. Count Five

Defendants moved to dismiss plaintiff's claim for an accounting. To state a claim for accounting under New York law, a plaintiff must plead: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) . . . a demand for an accounting and a refusal." Rosa v. TCC Commc'ns, Inc., No. 15CV1665, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016).

Defendants' motion to dismiss Count Five is granted for two reasons. First, the Complaint does not plead, as it must, that plaintiff demanded an accounting. See N.Y. Studios, Inc. v. Steiner Dig. Studios, 151 A.D.3d 454, 455 (1st Dep't 2017). Although this deficiency might possibly be cured through an amendment to the Complaint, the second problem cannot. The second problem is that the claim for accounting is duplicative of plaintiff's contractual claims. See Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC, 159 F. Supp. 3d 324, 340 (E.D.N.Y. 2016) ("New York courts

have dismissed equitable accounting claims where, as here, the plaintiff asserts a breach of contract claim seeking similar relief."). The accounting claim set forth in Count Five must accordingly be dismissed.

      i. Count Six

Additionally, defendants move to dismiss plaintiff's request for declaratory judgment. Plaintiff seeks a declaration stating that:

a) The non-compete, non-solicitation, choice of law and choice of forum provisions in the [Employee Proprietary Information and Inventions Agreement ("PIIA")] are void and unenforceable;[5] and

b) The choice of law, choice of forum, and "waiver of jury trial" provisions in the [Consulting] Agreement are void and unenforceable.

Compl., ¶ 99.

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such a declaration" only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). For a case to be justiciable, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v.

---

[5] Plaintiff has not alleged a breach of the PIIA in the Complaint.

Genentech, Inc., 549 U.S. 118, 127 (2007). Many of plaintiff's requests for declaratory judgment are non-justiciable under this standard.

First, a declaration regarding the jury waiver provision of the Consulting Agreement, non-competition clause in the PIIA, and the non-solicitation agreement in the PIIA are moot because Hester has already stipulated that these provisions will not be enforced. In a declaration submitted as part of a prior version of this case, Hester stated:

- "I, and Hidden PPF, agree to stipulate that upon transfer of this matter to New York, the jury waiver provision in Plaintiff's Consulting Agreement is void, and I will not attempt to enforce the jury waiver if Plaintiff refiles this case in New York." Hester Decl., Ex. A., ¶ 19, ECF No. 20.

- "I, and Hidden PFF, also agree to stipulate that upon transfer of this matter to New York, the non-competition and non-solicit provisions of Section 4 of the PIIA are void, and I will not attempt to enforce them if Plaintiff refiles this case in New York." Id., ¶ 20.

Given that plaintiff refiled the case in New York, Hester's stipulations about non-enforcement of these provision are in effect. There is thus no live controversy regarding the jury waiver provision of the Consulting Agreement, the non-competition clause in the PIIA, and the non-solicitation agreement in the PIIA.

Second, plaintiff's claim with respect to the forum-selection clauses in the PIIA and Consulting Agreement are also non-justiciable. There is no controversy with respect to the forum-selection clause in the PIIA because plaintiff does not allege that the PIIA has been breached. Regarding the Consulting Agreement, plaintiff has no standing to seek a declaratory judgment concerning the forum-selection clause of that agreement, because that clause requires cases to be heard in New York, Compl., Ex. B., ¶ 6(d), and the plaintiff has brought this case in New York.

Third, plaintiff's claim with respect to the choice-of-law provision in the PIIA is similarly non-justiciable. There is no genuine controversy concerning the choice-of-law provision in the PIIA, because plaintiff alleges no breach of the PIIA.

Finally, with respect to the choice-of-law provision in the Consulting Agreement, plaintiff has alleged no facts that support his contention that the choice-of-law provision contained therein is void and unenforceable. That claim accordingly does not pass muster under Rule 12(b)(6).

In sum, defendants' motion to dismiss Count Six is granted because plaintiff's requests for declaratory relief are either non-justiciable or fail to adequately state a claim for a declaratory judgment.

j. <u>Count Seven</u>

Defendants also moved to dismiss plaintiff's claim that the Consulting Agreement was breached. Plaintiff claims that that agreement was breached when defendants refused to pay him $20,000 during each of the three months following his termination from Hidden.NY, for $60,000 of total damages. Compl., ¶¶ 32, 105.

As a threshold matter, for the purposes of the motion to dismiss, the Court will apply New York law, in accordance with the choice-of-law provision in the Consulting Agreement. To begin with, "[a]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." <u>United States v. Moseley</u>, 980 F.3d 9, 20 (2d Cir. 2020). As explained above, plaintiff's claim that the choice-of-law provision is void and unenforceable alleged no facts to support that claim, and defendants contested plaintiff's position that the clause was unenforceable, <u>see</u> Def. Mem. Of Law in Supp. of Mot. to Dismiss at 21 n.6. There are thus no alleged facts to substantiate that the choice-of-law provision violates public policy or is fraudulent. Moreover, plaintiff himself analyzed this claim under New York law in his response to the motion to dismiss. <u>See</u> Pl. Opp. at 18-20. Accordingly, the Court will analyze this Count under New York law.

To state a claim for breach of the Consulting Agreement, plaintiff must establish: (1) the existence of a contract; (2) its own adequate performance of the contract; (3) breach of the contract by defendant; and (4) damages suffered as a result of the breach. Dollar Phone Corp., 559 F. App'x at 72.

The issue is whether plaintiff adequately alleged that the Consulting Agreement was modified so as to require Hidden.NY to pay plaintiff $20,000, rather than $15,000, per month. The text of the Consulting Agreement states that plaintiff was to be paid $15,000 per month. Compl., Ex. B. at 7 (Ex. A)("Consultant shall be paid a fee of USD $15,000 per month."). Plaintiff, however, claims that the Consulting Agreement was later modified by oral agreement to increase his payments to $20,000 per month. See Compl., ¶ 19.

The parties dispute whether the Consulting Agreement was, in fact, modified in this fashion. Defendants argue that the terms of the Consulting Agreement prohibited oral modification. Compl., Ex. B. at 3 (§ 6(b)) ("This Agreement . . . may not be amended or modified, by course of conduct or otherwise, except in writing duly executed by each of the parties."). Plaintiff counters that defendants' (alleged) partial performance under the modified terms establishes that the contract was modified, notwithstanding the contract's own prohibition on oral modification.

For purposes of the present motion, plaintiff's position is sufficient to avoid dismissal. See B. Reitman Blacktop, Inc. v. Missirlian, 52 A.D.3d 752, 753-54 (2d Dep't 2008) (finding partial performance sufficient to demonstrate "mutual departure from the written agreement" and concluding that "defendant waived the requirement of written modification contained in the parties' written contract."). The Complaint adequately alleges such partial performance; it avers that "Hidden NY paid Plaintiff $20,000 per month via biweekly payments for over four (4) months, without objection or dispute, and with Hester's full knowledge, consent, and participation." Compl., ¶ 21. Thus, the Complaint adequately supports a finding that the Consulting Agreement was modified to require payment of $20,000 per month. Defendants' motion to dismiss Count Seven must therefore be denied.

### k. Count Eight

Finally, defendants moved to dismiss plaintiff's defamation claim. Under New York law, to state a claim for defamation, a plaintiff must allege "(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019).

The Complaint alleges that "[d]efendants or those working in concert with them and/or at their direction contacted several high-profile figures in the streetwear industry . . . to tell them that [p]laintiff had stolen monies from Hidden NY and that, because of [p]laintiff's theft, [d]efendants were forced to terminate [p]laintiff." Compl., ¶ 51. Additionally, the Complaint alleges that these third-parties are either "actual or potential customers of [p]laintiff" or are likely to repeat the allegedly defamatory statements to plaintiff's actual or potential customers. Id. ¶ 52. And the Complaint further alleges that defendants made these statements with the intention of causing harm to plaintiff's professional reputation. Id. ¶ 53.

Defendants claim that the allegations in the Complaint are too vague to support a claim for defamation. While the allegations do lack important details (such as the specific people who allegedly received the defamatory statements), they suffice to put defendants on notice of the claim against them and thus pass muster under Rule 12(b)(6). While the Complaint also lacks an allegation as to damages, it does allege that the defendants made statements that were intended to, and did, injure plaintiff's trade, which under New York law is slander per se. Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992) (under New York law, "statements that. . . tend to injure another in his or her trade, business or profession" are "slander per se").

Defendants' motion to dismiss Count Eight is accordingly denied.

III. <u>Conclusion</u>

For the foregoing reasons, the Court's "bottom-line" order of June 16, 2023, is largely confirmed and slightly amended and modified as follows:

Plaintiff's motion to strike is granted.

Defendants' motion to dismiss is granted in part and denied in part. The Court hereby grants defendants' motion with respect to: (a) Count One to the extent that it asserts that defendants breached the Operating Agreement by failing to provide plaintiff with notice and an opportunity to participate at the meeting at which Hester purportedly amended the Operating Agreement and to the extent it asserts the defendants breached the Operating Agreement by failing to provide financial information; (b) Count Two; (c) Count Three; (d) Count Five; and (e) Count Six. Plaintiff is granted leave to replead his claim under Count One that defendants breached the Operating agreement by failing to provide financial information, provided he does so within one week after the filing of this Opinion and Order. Defendants' motion is denied in all other respects.

SO ORDERED.

Dated: New York, NY

    July 22, 2023

                                          JED S. RAKOFF, U.S.D.J.